**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**SCOTT HARRIS KOBEL,**

    **Plaintiff,**

    **v.**

**DON DUNKLE, et al.,**

    **Defendants.**

Case No. 16-3227

**MEMORANDUM & ORDER**

This matter comes before the court upon defendants Don Dunkle, McGovern (first name unknown), Douglas County Sheriff's Office, and Douglas County Jail's Motion for Summary Judgment (Doc. 30). Also before the court is plaintiff's renewed Motion to Appoint Counsel (Doc. 42).

**I.   Background**

Plaintiff Scott Harris Kobel filed a complaint on November 14, 2016. (Doc. 1.) Plaintiff used the form Civil Rights Complaint for claims brought pursuant to 42 U.S.C. § 1983. The factual allegations plaintiff details in his complaint align closest to an Eighth Amendment claim. *Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (explaining that excessive force claims involving convicted prisoners arise under the Eighth Amendment; Fourth Amendment excessive force claims apply to facts leading up to and including arrest; Fifth or Fourteenth Amendment excessive force claims address instances that fall "somewhere between the two stools of an initial seizure and post-conviction punishment.").

Plaintiff claims that his right to be free from excessive force was violated when defendant Dunkle allegedly attacked plaintiff while he was incarcerated in "approximately June/July 2016."

(Doc. 1, at 3–4.) Plaintiff mentions his Fourth and Fifth Amendment rights but provides no argument supporting those allegations. The court will therefore treat plaintiff's complaint as one alleging Eighth Amendment violations.

Plaintiff claims defendant Dunkle attacked him, striking him in the back of the head multiple times while plaintiff was in the infirmary. (*Id.* at 7.) Plaintiff claims he filed multiple complaints with the prison seeking relief and states that he has exhausted the disciplinary appeal process. (*Id.* at 12.)

Plaintiff seeks relief in the form of a court-issued warrant for defendant Dunkle's arrest (*id.* at 5–6) and an injunction prohibiting Douglas County Sheriff's Office from employing defendant Dunkle in the future (*id.* at 6). Plaintiff also seeks in excess of $750,000 in compensatory and $750,000 in punitive damages. (*Id.*)

## II. Legal Standards

### A. Pro Se Litigants

Where a plaintiff proceeds pro se, the court construes his filings liberally and holds them to less stringent standards than pleadings filed by lawyers. *Barnett v. Corr. Corp of Am.*, 441 F. App'x 600, 601 (10th Cir. 2011). Pro se plaintiffs are nevertheless required to follow the Federal and Local Rules of practice and the court does not assume the role of advocating for plaintiff. *United States v. Porath*, 553 F. App'x 802, 803 (10th Cir. 2014).

### B. Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The party moving for summary judgment has the burden to show "the lack of a genuine issue of material fact." *Ascend Media Prof'l Servs., LLC v. Eaton Hall Corp.*, 531 F. Supp. 2d 1288, 1295 (D. Kan. 2008) (citing *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986))). Once the moving party meets this initial burden, the burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).

The nonmovant may not rest on his pleadings or "rely on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986)); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Instead, the nonmovant is required to set forth specific facts, by referencing affidavits, deposition transcripts, or exhibits, from which a rational trier of fact could find for him. Fed R. Civ. P. 56(c)(1); *see also Ascend Media*, 531 F. Supp. 2d at 1295 (citing *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)). Summary judgment is not a "disfavored procedural shortcut" —it is an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### C.  Summary Judgment Briefing Procedure

As required by the local rules, defendants set forth a statement of uncontroverted facts, each separately numbered and referring with particularity to those portions of the record upon which each statement relies. D. Kan. Rule 56.1(a). The rules provide that all facts set forth in such a statement are deemed admitted for the purposes of summary judgment unless specifically controverted by the statement of the opposing party. The responding party must also "refer with particularity to those

portions of the record upon which the opposing party relies." D. Kan. Rule 56.1(b)(1). The Rules further provide that if the nonmoving party "relies on any facts not contained in the movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record." Rule 56.1(b)(2). "All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions." Rule 56.1(d). Plaintiff, as a pro se party, was provided a full copy of these rules as required by 56.1(f). (Doc. 32.)

Plaintiff generally does not controvert defendants' statements in numbered paragraphs. Because he did not, those allegations are deemed admitted for purposes of summary judgment. "[I]t is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004).

### III.   Uncontroverted Facts

Plaintiff was being housed in a maximum-security pod at Douglas County Correctional Facility on April 1, 2016, when around 7:30 p.m. he attempted suicide by cutting his upper body. Plaintiff was taken to a cell in the medical unit for first aid until he could be transported to Lawrence Memorial Hospital. At 7:35 p.m. defendant Dunkle entered plaintiff's cell because plaintiff reported that his handcuffs were hurting his wrists. Defendant Dunkle dropped a handcuff key after entering the cell and put a hand on plaintiff's chest to keep him from obtaining it.

Defendant Dunkle and plaintiff continued to interact for around 20 minutes. Plaintiff and defendant Dunkle argued verbally and at one point both exited the cell. Eventually, defendant Dunkle grabbed plaintiff's handcuffs to put him back in his cell, while plaintiff tried to pull away. Defendant

Dunkle also shoved plaintiff's right shoulder to put him back in the cell. Defendant Dunkle did not enter the cell again after plaintiff was returned. Plaintiff was transported to the hospital shortly after 8 p.m.

Officer Jesse Cheek and Nurse Carol Krueger witnessed parts of this interaction; they were standing in or near the door of the cell throughout the encounter. The internal affairs report cited in defendants' uncontroverted facts relates interviews with both Cheek and Krueger. Neither reported any physical altercation either inside or outside the cell. The *Martinez* report interview with Ms. Krueger says that

> [S]he remembered standing there looking at Kobel because she is fascinated by the things he says and gets away with. She stated it was verbal abuse. Krueger went on to say Kobel was threatening Sgt. Dunkle and threatening Sgt. Dunkle's family. Krueger stated she did not see any altercation. She said she saw Sgt. Dunkle approach Kobel, but she could not see Kobel, and then she walked away.

(Doc. 12-1, at 10.) The interview with Officer Cheek related a consistent series of events.

> Officer Cheek stated the only time he saw Sgt. Dunkle make contact with Kobel was when they were outside the cell. . . [Sgt. Dunkle] was trying to un-cuff [Kobel] and he is being difficult and acting funny. I think Sgt. Dunkle was trying to get him back in his cell and I think he might have had a push like the back of his shoulder blade into the cell. That's the only physical contact I seen minus the un-cuffing. . . the only time I saw him make physical contact is when he shoved him outside the cell. . . Officer Cheek said he didn't think Sgt. Dunkle made contact with [Kobel], but there could have been a touch on the chest to back Kobel up.

(*Id.*, at 16.) Lieutenant Joe Meyers photographed plaintiff's head and defendant Dunkle's hands after the interaction and neither shows any sign of physical altercation or injury.

**IV.    Discussion**

    **A.    Plaintiff's discovery request**

The court notes that before defendants filed their motion for summary judgment, plaintiff issued a document titled "Motion for Subpoena of Records" (Doc. 24). The document requests that the court subpoena all Douglas County Jail records for plaintiff from July 14, 2013 through September 30,

-5-

2016; all Lawrence Memorial Hospital records for the same time period; and all civil claims against Douglas County Jail and any contracted physicians, HIV specialists, and neurological specialists for the same three years.  This motion was denied without prejudice by the magistrate judge and a discovery stay was entered in this case pending resolution of defendants' summary judgment motion.

This motion to subpoena documents becomes relevant to the instant motion however, because plaintiff did not substantively respond to defendants' motion for summary judgment.  Instead, he claims that he cannot respond absent the discovery he requested.  Considering the stage of the case, the claims involved, and the request at issue, the court finds that plaintiff's discovery request was premature and correctly denied without prejudice.

The Federal Rules of Civil Procedure govern discovery in federal court.  Plaintiff must comply with these rules to proceed in federal court.  Under the Federal Rules, defendants were exempt from initial disclosures in this case because this case is "an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision."  Fed. R. Civ. P. 26(a)(1)(B).  A discovery plan for this case would have been discussed once the court held its scheduling conference under Fed. R. Civ. P. 26(f).  One benefit of such a conference is to determine an appropriate scope for discovery, including any:

> nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' respective access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

This case never proceeded to a scheduling conference because defendants filed their motion for summary judgment before one was scheduled.  But even if it had, plaintiff's request is disproportionate to the needs of the case and appears, at least in part, irrelevant.  It requests over three years of

-6-

information from defendant and other third-parties, even though the claims in this case are limited to a single day. In any event, the court did not find the information sought necessary to resolving the issues in this case.

Plaintiff's response to defendants' motion for summary judgment is a list of general complaints. For example, he states that the *Martinez* report affidavits are inconsistent. However, he does not explain what the alleged inconsistencies are, or how that supports his argument that his constitutional rights were violated. Plaintiff did not attempt to address defendants' statement of uncontroverted facts. Instead of focusing on his need for discovery in his response to defendants' motion for summary judgment, plaintiff needed to comply with the notice to pro se litigants (Doc. 32) and substantively address the uncontroverted facts and arguments in the motion. Because he failed to do so, the court considers defendants' uncontroverted facts as true for purposes of this motion, and the arguments in the briefing are considered largely uncontested.

### B. Defendants Dunkle and McGovern Are Entitled to Qualified Immunity on Any Individual Capacity Claims

Plaintiff does not clarify in his briefing whether the claims brought against the individual defendants are individual or official-capacity claims. For the reasons explained below, to the extent plaintiff brings individual-capacity claims, they are dismissed.

#### 1. Any Individual Capacity Claims are Barred by Qualified Immunity

Qualified immunity is a defense to individual capacity claims. "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). A right is not "clearly established" under the law "unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* This means that

-7-

"existing precedent must have placed the statutory or constitutional question confronted by the official 'beyond debate.'" *Id.* Qualified immunity protects public employees from the burdens of litigation as well as liability. *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016).

When a defendant asserts the defense of qualified immunity, the burden is on plaintiff to show "(1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* If a plaintiff fails to prove either part of this test, the defendant is entitled qualified immunity.

A plaintiff may show that a right is clearly established by citing either an on-point United States Supreme Court or Tenth Circuit Court of Appeals case, or by showing that the weight of authority from other circuits supports his position. *Id.* But a case on point is not always required. The Tenth Circuit has also adopted a sliding-scale analysis for which the "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

Courts generally accept a plaintiff's version of the facts as true for purposes of qualified immunity, but where the case has progressed to the summary judgment stage, the plaintiff's facts must be supported by the record. *Id.* at 1136.

Here, plaintiff did not respond to defendants' qualified immunity argument. He does not cite to any case law suggesting his constitutional rights were violated. To the extent plaintiff intended to bring individual-capacity claims against defendants Dunkle and McGovern, summary judgment is granted.

### 2.     Official Capacity Claims

The individual defendants argue that they are entitled to summary judgment on their official-capacity claims because such claims are just another way of suing the governmental entity that employs them and that because the local government entity can be sued directly, there is no need to sue individuals in their official capacities.

It is true that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159 (1985)). But this does not mean that the individual defendants should be dismissed from suit or that they are entitled to summary judgment. Instead, it means that the suit is treated as a suit against the governmental entity, and that the entity's policy or custom must have been involved in the alleged constitutional violation. *Id.* (citing *Kentucky*, 473 U.S. at 163, 166). This also means that official-capacity defendants are only entitled to those defenses available to the governmental entity they represent, such as Eleventh Amendment immunity. Therefore, the individual named defendants are not entitled to summary judgment on this basis.

### C.   No Evidence Supports Plaintiff's Eighth Amendment Claim

Defendants are entitled to summary judgment because plaintiff's claims fail substantively. The evidence viewed in the light most favorable to plaintiff would not allow a rational trier of fact to find for him and defendants are entitled to summary judgment as a matter of law. The Eighth Amendment protects cruel and unusual punishment, including the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). What types of actions constitute unnecessary and wanton infliction of pain differ depending on the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Many situations in prisons "require prison officials to act quickly and decisively" and require them to "be accorded wide-ranging deference in the adoption and execution of policies and

practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 6 (citing *Whitley*, 475 U.S. at 321–22).

To decide whether prison officials used excessive force under circumstances similar to those alleged in this case, courts consider "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. To determine the nature of the force, the courts consider various factors including: (1) the need for force; (2) the amount of force used; (3) the threat perceived by officials; (4) the extent of the threat to the safety of staff and inmates; and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 473 U.S. at 321. Applying these factors to the uncontroverted facts in this case, the court finds that the force applied constituted a good-faith effort to maintain discipline.

First, a need for force existed. The uncontroverted facts establish that defendant Dunkle entered plaintiff's cell in the medical unit to address plaintiff's complaint that the handcuffs he was wearing were hurting him. Reports from witnesses relate a heated verbal argument between plaintiff and defendant Dunkle. No witness suggested that a physical altercation took place. Defendant Dunkle dropped his handcuff key on the ground and needed to keep plaintiff from obtaining it. When plaintiff made a move towards the key, defendant Dunkle placed a hand on plaintiff's chest or pushed plaintiff to keep him from grabbing the key. Later, defendant Dunkle again directed plaintiff back to his cell by pulling his handcuffs or pushing him on the shoulder. There was a need for defendant Dunkle to apply force to stop plaintiff from obtaining the handcuff keys to maintain order.

Second, the amount of force applied was necessary to maintain order. The amount of force accomplished defendant Dunkle's goal of maintaining safety. The force used—placing his hand on plaintiff's chest, or pushing him back from the key, and guiding him back into his cell by manipulating the handcuffs, or pushing plaintiff on the shoulder, was not excessive. There is no evidence that

-10-

plaintiff was injured by defendant Dunkle's actions. Therefore, the amount of force applied is proportional to the need for the force.

Third, the force used was proportional to the threat perceived by prison officials. Although the threat of an isolated inmate obtaining a handcuff key or exiting his cell may not seem to be a huge threat to prison officials, they are clearly undesirable in a prison setting. Plaintiff was handcuffed in front of his body, likely due to the fact that he had tried to kill himself. He still had to be restrained and kept in a cell to maintain safety and order in the prison. Defendant Dunkle and other prison officials appropriately dealt with plaintiff's attempt to reach the key and reluctance to return to his cell.

Fourth, an inmate's attempt to obtain handcuff keys is a threat to the safety of staff and inmates. Inmates are restrained for a reason. That is often because they are viewed a danger to themselves or others. In this case, plaintiff had already shown he was a danger to himself based on his attempted suicide. He was in the midst of a verbal argument with defendant Dunkle when he attempted to obtain the handcuff keys. Witnesses reported that plaintiff was making threatening remarks. Medical staff were present in the medical unit. In order to keep plaintiff, medical staff, and prison officials safe, plaintiff needed to be restrained and kept in his cell. The amount of force used by defendant Dunkle was effective and not excessive to obtain that objective.

Fifth, the court considers whether there was any attempt to temper a forceful response. The court does not have much information before it on this matter. But because the force used was minimal, tempering was also unnecessary.

Each of these factors suggest that the nature of the force used by defendant Dunkle to keep plaintiff from obtaining the handcuff keys and to return him to his cell were good-faith efforts to maintain discipline. There is no evidence that they were malicious or sadistic. Defendants have shown that there is no issue of material fact and that they are entitled to judgment as a matter of law. Plaintiff

failed to respond to defendants' allegations with any substance, or to provide any record evidence to support his claims. Given plaintiff's incarceration, the court would have made some allowance for plaintiff's lack of documentary evidence. But plaintiff did not substantively address any of defendants' uncontroverted facts or provide any evidence to counter the motion for summary judgment. He has not provided any evidence or argument that would allow a reasonable trier of fact to find for him. Defendants' motion for summary judgment is therefore granted.

### D. Defendant Douglas County Sheriff's Office and Douglas County Jail Are Not Subject to § 1983 Suit

Additionally, defendants Douglas County Sheriff's Office and Douglas County Jail are not subject to suit under § 1983. Both defendants are subunits of county government and therefore not subject to suit under 42 U.S.C. § 1983 unless a specific statute authorizes suit. *Whayne v. Kansas*, 980 F. Supp. 387, 391 (D. Kan. 1997). Ordinarily, the court might allow an amendment so the correct party could be added. But, as explained above, because plaintiff fails to state a claim upon which relief can be granted, such amendment would be futile. Defendants Douglas County Sheriff's Office and Douglas County Jail's motion for summary judgment is therefore granted.

### E. Plaintiff's Renewed Motion to Appoint Counsel

On January 8, 2018, plaintiff renewed his request that the court appoint counsel to represent him. 28 U.S.C. § 1915(e)(1) provides that the "court may request an attorney to represent any person unable to afford counsel." "There is no constitutional right to appointed counsel in a civil case." *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989) (citing *Bethea v. Crouse*, 417 F.2d 504, 505 (10th Cir. 1969)). The party requesting appointed counsel bears the burden to show that their claims have sufficient merit to warrant appointment. *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (quoting *McCarthy v. Weinberg*, 753 F.2d 836, 383 (10th Cir. 1985)). The court

considers "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115.

For the reasons explained above, the court finds that plaintiff's claims are not meritorious. The court agrees with magistrate judge's previous determination that issues in this case are not particularly complex. The court is aware that plaintiff is being treated at Larned Correctional Mental Health Facility and this is a factor the court considers in determining this matter. However, plaintiff has actively participated in this case and the court finds that he was capable of adequately presenting the facts and arguments involved. Plaintiff offers no other argument in favor of appointing counsel. Considering all factors, especially given the court's findings on defendants' motion for summary judgment and the stage of this case, the court denies plaintiff's motion to appoint counsel.

**IT IS THEREFORE ORDERED** that defendant Don Dunkle, (first name unknown) McGovern, Douglas County Sheriff's Office, and Douglas County Jail's Motion for Summary Judgment (Doc. 30) is granted.

**IT IS FURTHER ORDERED** that plaintiff's renewed Motion to Appoint Counsel (Doc. 42) is denied.

This case is closed.

Dated January 25, 2018, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**